# EXHIBIT C

| | |
|---|---|
| **DENVER DISTRICT COURT, CITY OF DENVER, COUNTY OF DENVER, STATE OF COLORADO.**<br>1437 Bannock Street,<br>Denver, CO 80202 | DATE FILED: February 24, 2020 2:00 PM<br>FILING ID: F5641C2561D5D<br>CASE NUMBER: 2020CV30728 |
| Plaintiffs: **ROBERT and NICOLE DIAZ, and ALBERT and LORRAINE MALDONADO,** on behalf of themselves and all others similarly situated<br><br>v.<br><br>Defendant: **DARLING INGREDIENTS INC. (d/b/a DarPro and Pepcol Manufacturing).** | ▲ **COURT USE ONLY** ▲ |
| *Attorneys for Plaintiffs*<br>R. Keith Fuicelli, #32108<br>FUICELLI & LEE, P.C.<br>1731 Gilpin Street<br>Denver, Colorado 80218<br>Phone Number: (303) 355-7202<br>Fax Number:    (303) 355-7208<br>E-mail address:  keith@coloradoinjurylaw.com<br><br>*Steven D. Liddle<br>*Laura L. Sheets<br>*Matthew Z. Robb<br>*Pro Hac Vice Motions to be Submitted*<br>LIDDLE & Dubin P.C.<br>975 E. Jefferson Ave.<br>Detroit, MI 48207<br>P: (313) 392-0015<br>F: (313) 392-0025<br>Email addresses:  sliddle@ldclassaction.com<br>                         lsheets@ldclassaction.com<br>                         mrobb@ldclassaction.com | Case No.<br><br>Div:<br><br>Courtroom: |
| **CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY** | |

Plaintiffs, through counsel, states the following complaint:

## INTRODUCTION

1.      Plaintiffs ROBERT and NICOLE DIAZ ("The Diazes") and ALBERT and LORRAINE MALDONADO ("The Maldonados"), on behalf of themselves and all others similarly situated, bring this class action against Defendant DARLING INGREDIENTS INC. ("Defendant"), which owns and operates an animal rendering and used grease processing facility in the City of Denver, Colorado ("the Facility").

2. Through its operation of the Facility, Defendant released, and continues to release, noxious odors that invade Plaintiffs' property, causing property damage through nuisance and negligence.

## PARTIES

3. At all times relevant hereto, Plaintiffs Robert and Nicole Diaz have been citizens of Colorado and have resided at 3641 Milwaukee Street, Denver County, Denver, Colorado.

4. At all times relevant hereto, Plaintiffs Albert and Lorraine Maldonado have been citizens of Colorado and have resided at 4132 Clayton Street, Denver County, Denver, Colorado.

5. Defendant Darling Ingredients Inc. is a for-profit company incorporated in the State of Delaware and maintaining its principal place of business in the State of Texas, at 251 O'Connor Ridge Boulevard, Suite 300, Irving, Texas 75038.

6. Defendant's facility is located at 5701 North York Street, Denver, Colorado, in Adams County.

7. Defendant's Registered Agent in the State of Colorado is C T Corporation System, with a street address at 7700 East Arapahoe Road, Suite 220, Centennial, Colorado 80112.

8. Upon information and belief, Defendant, including its predecessors and agents, constructed the Facility and exercised control and ownership over the Facility at all relevant times hereto.

## JURISDICTION AND VENUE

9. Plaintiffs are citizens of Denver County, where a substantial portion of the tort was committed.

10. Defendant, which is incorporated in the State of Delaware and maintains its principal place of business in Texas, is a non-resident of this State.

11. The Court has personal jurisdiction over Defendant, who has at least minimum contacts with the State of Colorado because it regularly conducts substantial business in Colorado through the ownership and operation of the Facility.

12. This Court has subject matter jurisdiction over this matter, as all claims alleged herein arise under the common law of the State of Colorado and exceed $25,000 in damages.

13. Defendant at all relevant times hereto conducted substantial business in the State of Colorado through its operation of the Facility, and a substantial portion of the tort caused by Defendant's acts and omissions occurred in Denver County.

14. Venue in the Denver District Court is proper.

## GENERAL ALLEGATIONS

15. Defendant operates an industrial animal rendering and used grease processing facility surrounded by residential properties.

16. Plaintiffs reside within the class boundaries alleged herein.

17. Plaintiffs' property has been and continues to be physically invaded by noxious odors.

18. The noxious odors which entered Plaintiffs' property originated from Defendant's facility.

### *Defendant's Industrial Process*

19. Defendant processes animal carcasses, bone, inedible animal byproducts, and used commercial grease into marketable ingredients for products including feed and fuel.

20. Defendant's operations include an industrial animal rendering process and a used grease processing facility.

21. For its animal rendering process, Defendant collects discarded animal byproducts, including fat, bones, feathers, entrails, and internal organs from a wide range of commercial sources, such as butcher shops.

22. The animal waste byproducts are dumped into industrial equipment, ground en masse, and heated to extract water and separate oils from animal tissue.

23. Protein is separated from the cooked material through industrial pressing, grinding, and sifting.

24. Defendant's animal rendering process also produces tallow, a hard, fatty substance, which is centrifuged and refined.

25. Defendant's animal rendering process results in marketable tallow, protein, and meal byproducts, which it sells commercially.

26. For Defendant's grease recycling process, Defendant collects used cooking oil from food service establishments.

27. The used cooking oil is heated, settled, and refined.

28. The grease processing produces yellow grease, feed-grade animal fat, and oleo-chemical feedstocks, which it sells commercially.

29. Defendant's industrial process involves substantial pollutants, including highly noxious odors.

3

30. Defendant's industrial process involves industrial quantities of dead animal carcasses and other used waste.

31. Defendant's industrial processes produce substantial quantities of wastewater and organic sludge, and Defendant is responsible for processing, treating, and disposing of the waste produced through its industrial processes.

32. Defendant's business requires storage and handling of substantial amounts of animal carcasses and other highly odiferous organic materials.

33. Defendant is required to maintain and implement adequate odor mitigation and emission control processes and technology to minimize environmental impacts and prevent noxious odors from invading the ambient air outside of the Facility.

34. Upon information and belief, Defendant utilizes primarily, if not exclusively, "scrubbers" to eliminate odors from its industrial operations, including both the animal rendering and grease recycling.

### *Defendant's Noxious Fumes and Emissions*

35. The emissions from Defendant's manufacturing processes, including the predicate and consequent waste products, are noxious and highly odiferous.

36. Defendant has, on occasions too numerous to list herein, emitted unreasonably noxious odors into the ambient air outside of the Facility.

37. The noxious odors and emissions caused by the Facility have been and continue to be dispersed across all public and private land in the Class Area.

38. Plaintiffs' property has been, and continues to be, invaded by noxious odors and emissions from Defendant's Facility.

39. A properly operated and maintained animal rendering and grease processing facility will not emit noxious odors into the ambient air as fugitive emissions.

40. Defendant is required to control its odorous emissions by, among other things, utilizing adequate odor mitigation and control technologies at the Facility; adequately operating and maintaining its odor mitigation and control technologies to prevent off-site odors; adequately storing and disposing of the organic waste, wastewater, and sludge utilized during and produced through its industrial processes, to prevent off-site odors; and other reasonable odor mitigation, elimination, and control systems available to Defendant.

41. Defendant has failed to install, operate, maintain, and/or implement adequate odor mitigation and control strategies, processes, technologies, and/or equipment to control its odorous emissions from the Facility and prevent those odors and emissions from invading the homes and properties of Plaintiffs and the putative Class.

4

### *Impacts of Defendant's Actions and Omissions on Plaintiffs and the Putative Class*

42. The Facility and its odorous emissions have been the subject of frequent complaints from residents in nearby residential areas.

43. Numerous media reports have documented community concerns regarding the smell of "death" invading their neighborhoods and properties.

44. At least 50 households have contacted Plaintiffs' counsel to date documenting the odors they attribute to the Defendant's facility.

45. On November 18, 2019, Plaintiffs Robert and Nicole Diaz reported to Plaintiffs' Counsel that "[w]e have experienced this odor far too often. It forces us to go inside. This has affected gatherings [at] our home and interrupts anything we're doing around the home/yard. It makes us both nauseous. We're also forced to walk our dog [at] city park [approximately] 2.0 miles south to avoid this odor."

46. On November 19, 2019, Plaintiffs Albert and Lorraine Maldonado reported to Plaintiffs' Counsel that "[t]hese odors smell so bad we have to close our doors and windows, and stay locked-up in our own home. We are unable to enjoy our yard outside because of that terrible odor."

47. Below is a small sampling of the factual allegations made by putative class members to Plaintiffs' counsel, demonstrating that the Facility is the source and cause of the odor emissions, which have damaged their neighboring properties.

   a. On November 21, 2019, putative class member Lois Doll from Denver reported that "I have complained about the STENCH of dead animal smell that makes me close my windows and doors and stay in the house. It is nauseating!"

   b. On November 27, 2019, putative class member Kerry Hebert from Denver reported that "[t]he odor is pervasive and nauseating-sickening. The clearest description of it is that it smells like something dead and rancid. It almost always occurs at night and once woke me out of a sound sleep in my basement."

   c. On December 10, 2019, putative class member Lawrence Leuvano from Denver reported that "[t]he smell is a foul carcass ordor [sic] that is airborne. The worse [sic] smell ever in the summer time is the worse [sic] you have to close all widow [sic]. And sometime smell make me sick to my stomach."

   d. On November 22, 2019, putative class member Kelly MacNeil from Denver reported that that "[t]he odors smell like something dead is in the air. They tend to be highest on the weekends, it seems. They make using our outdoor space completely undesirable. The smells also prevent us from enjoying outdoor walks or commutes around the neighborhood."

5

   e. On November 19, 2019, putative class member Jeremy Sacken from Denver reported that "[t]he odors are disgusting. It's not that normal Purina smell either. It is so bad I don't want to go outside."

   f. On November 25, 2019, putative class member Thomas Scharfenberg from Denver reported a "Death Smell." He stated that because of the odors he "can't sit in backyard most days. Can't open windows at night – smell gets so bad it wakes me up. Hold breath while walking to car/bus."

48. Defendant's well documented pattern of failing to control its emissions is further demonstrated by the following:

   a. Numerous and repeated resident complaints to Defendant, the Colorado Department of Public Health and Environment ("CDPHE"), the Denver County Department of Public Health and Environment, and the Tri-County Health Department, directly attributing noxious odors to Defendant's facility. The complaints document date-specific odor events.

   b. Numerous media reports regarding Defendant's "death" odors and emissions.

   c. The Denver County Department of Public Health and Environment, the CDPHE, and the Tri-County Health Department have attributed the odors to Defendant's rendering plant.

49. Defendant has emitted, and continues to emit, objectionable odors that are detectable outside the bounds of the Facility property.

50. Defendant's objectionable off-site odors have caused negative impacts to its neighbors, including Plaintiffs, the putative class, and their respective properties.

51. Documented complaints from Plaintiffs and the putative class to both Plaintiffs' counsel and public authorities demonstrate that the "death" odors are unreasonable and "nauseating" to those who suffer from them.

52. The noxious odors emitted from the Facility are offensive and uncomfortable, would be offensive to a reasonable person of ordinary health and sensibilities, and have caused property damage, including by interfering with the ability of Plaintiffs and the Class to use and enjoy their homes and property.

53. The invasion of Plaintiffs' property and that of the Class by noxious odors has reduced the value of that property and has interfered with the use and enjoyment of that property, resulting in damages.

54. The Class Area is home to a wide range of recreational and commercial activities, including but not limited to public parks, manufacturing, retail, dining, athletics, education, and lodging.

55.	Plaintiffs and the Class are a limited subset of individuals in Denver and Adams Counties and the Class Area who are the owners and/or holders of private, residential property interests. *See*, infra, at ¶ 58.

56.	Members of the public, including but not limited to businesses, employees, commuters, pedestrians, tourists, visitors, minors, customers, clients, and students have experienced and been harmed by the fugitive noxious odors emitted from the Facility into public spaces; however, unlike Plaintiffs and the Class, members of the public who are outside of the Class Definition have not suffered damages of the same kind, in the form of diminished property values and/or loss of use and enjoyment of their private property.

57.	Defendant has long known that its operation of the Facility was causing unreasonable off-site odor impacts on its residential neighbors; yet Defendant knowingly failed to take reasonable steps to abate the harm to its neighbors and their property.

58.	Defendant negligently, unreasonably, and knowingly failed to properly construct, operate, repair, and/or maintain the Facility, thereby causing the invasion of Plaintiffs' property by noxious odors on unusually frequent, intermittent and ongoing reoccurring occasions.

## CLASS ALLEGATIONS

### A.	Definition of the Class

59.	Plaintiffs restate the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

60.	Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to the Colorado Rules of Civil Procedure. Plaintiffs seek to represent a Class of persons preliminarily defined as:

**All owner/occupants and renters of residential property residing in the area bounded by the following routes, beginning in Adams County, Colorado** (**Exhibit 1**, Class Boundary Map)**:**

Beginning at the intersection of US-25 and East 58th Avenue, **East** along East 58th Avenue to York Street; **South** on York Street to CO-265 & Brighton Boulevard; **Northeast** on Co-265 & Brighton Boulevard to East 56th Avenue; **East** on East 56th Avenue to CO-2 and Colorado Boulevard; **South** on CO-2 and Colorado Boulevard to East 26th Avenue; **West** on East 26th Avenue to Downing Street; **North** on Downing Street to Walnut Street; **Northeast** on Walnut Street to 38th Street; **Northwest** on 38th Street to Washington Street; **Continue** on Washington Street to East 45th Avenue; **West** on East 45th Avenue to Pearl Street; **South** on Pearl Street to East 44th Avenue; **West** on East 44th Avenue to Sherman Street; **South** on Sherman Street to East 43rd Avenue; **West** on East 43rd Avenue to US-25; **North** on US-25 to intersection of US-25 and East 58th Avenue (starting location).

7

61. The definitional boundary is based on the location of residents that submitted Data Sheets to Plaintiffs' counsel documenting complaints of noxious odors attributed to Defendant's facility, in addition to the location of residents who documented complaints to public authorities.

62. The definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class ("Class Members"). Plaintiffs reserve the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

63. This case is properly maintainable as a class action pursuant to and in accordance with Rule 23 of the Colorado Rules of Civil Procedure in that:

   a. The Class, which includes thousands of members, is so numerous that joinder of all members is impracticable;

   b. There are substantial questions of law and fact common to the Class including those set forth in greater particularity herein;

   c. Questions of law and fact such as those enumerated below, which are all common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

   d. The claims of the representative parties are typical of the claims of the Class;

   e. A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

   f. The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

   g. There are no unusual difficulties foreseen in the management of this class action; and

   h. Plaintiffs, whose claims are typical of those of the Class, through their experienced counsel, will zealously and adequately represent the Class.

### B. Numerosity

64. The number of residential households within the Class Area is over 5,000.

65. The Class consists of thousands of members and therefore is so numerous that joinder is impracticable.

### C. Commonality

66. Numerous common questions of law and fact predominate over any individual questions affecting Class Members, including, but not limited to the following:

8

      a. whether and how Defendant negligently, unreasonably, knowingly, intentionally, recklessly, and grossly failed to construct, operate, and maintain the Facility and its operations;

      b. whether Defendant owed any duties to Plaintiffs;

      c. which duties Defendant owed to Plaintiffs;

      d. which steps Defendant has and has not taken in order to control the emission of noxious odors through the construction, operation, and maintenance of its animal rendering and grease processing facility and their respective operations;

      e. whether Defendant met its standard of care with respect to its operation, construction, and maintenance of the Facility and its operations;

      f. whether and to what extent the Facility's noxious odors were dispersed over the Class Area;

      g. whether it was reasonably foreseeable that Defendant's failure to properly construct, operate, and maintain the Facility and its operations would result in an invasion of neighboring property interests;

      h. whether the degree of harm suffered by Plaintiffs and the Class constitutes an unreasonable annoyance or interference; and

      i. the proper measure of damages incurred by Plaintiffs and the Class.

### D.   Typicality

67. Plaintiffs have the same interests in this matter as all the other members of the Class and their claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

68. The claims of Plaintiffs and the other Class Members have a common cause and their damages are of the same type. The claims originate from the same failure of the Defendant to properly construct, operate, and maintain the Facility and its operations.

69. All Class Members have suffered injury in fact as a result of the invasion of their property by Defendant's release of noxious odors, causing damage to their property.

### E.   Adequacy of Representation

70. Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class' claims will be prosecuted with diligence and care by Plaintiffs as representative of the Class. Plaintiffs will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class.

71. Plaintiffs have retained the services of counsel who are experienced in complex class action litigation and in particular class actions stemming from invasions of noxious industrial emissions. Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiffs and all absent Class Members.

### F.   Class Treatment Is the Superior Method of Adjudication

72. A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

    a. Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

    b. Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

    c. The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

    d. The proposed class action is manageable.

73. The prosecution of separate actions by or against individual members of the Class would create the risk of (i) inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for the party opposing the Class; and (ii) adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

74. Notice can be provided to members of the Class by U.S. Mail and/or publication.

### I.   CAUSE OF ACTION ONE
### NUISANCE

75. Plaintiffs restate the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

76. Plaintiffs utilized their property as a residence and reside within the Class Area.

77. The noxious odors which entered Plaintiffs' property originated from Defendant's facility, which is in close proximity to the boundaries of the Class Area.

78. By failing to reasonably construct, operate, and/or maintain the Facility, Defendant has caused an invasion of Plaintiffs' property by noxious odors on unusually frequent occasions that are too numerous to individually list herein.

pg 12 of 15

79. The noxious "death" odors are unreasonable and cause substantial discomforts to residents who experience the odors.

80. The noxious odors invading Plaintiffs' property are indecent and offensive to Plaintiffs, and indecent and offensive to individuals with ordinary sensibilities and obstruct the free use of Plaintiffs' property so as to substantially and unreasonably interfere with the comfortable enjoyment and use of life and property.

81. Defendant knew that it was emitting noxious odors onto neighboring properties yet failed to take reasonably adequate steps to abate the nuisance.

82. Defendant owed and continues to owe a duty to the public to prevent and abate the interference with, and the invasion of, the free use and enjoyment of public spaces by emitting noxious pollutants into the ambient air.

83. Defendant owed, and continues to owe, a duty to Plaintiffs and the Class to control, prevent, and abate emissions that unreasonably interfere with Plaintiffs' private property interests.

84. As a foreseeable, direct and proximate result of the foregoing conduct of Defendant, Plaintiffs suffered damages to their property as alleged herein.

85. By causing noxious odors that physically invaded Plaintiffs' property, Defendant created a nuisance which substantially and unreasonably impaired Plaintiffs' use and enjoyment of their property on unusually frequent occasions too numerous to mention individually.

86. Such substantial and unreasonable interference includes, but is not limited to:

   a. loss of use and ability to enjoy the outside areas of Plaintiffs' property or to open windows due to the presence of noxious odors;

   b. decrease in the value of Plaintiffs' property; and

   c. annoyance, inconvenience, and physical discomfort, including but not limited to, being woken up in the middle of the night by noxious odors, the physical discomfort and accompanying symptoms of enduring noxious odors, and the inability to invite guests to Plaintiffs' residence due to the embarrassment and annoyance of the noxious odors invade Plaintiffs' property.

87. Separate and distinct from the property damage incurred by Plaintiffs and the Class, Defendant's emissions have substantially interfered with rights common to the general public, including the right to uncontaminated and/or unpolluted air.

88. Plaintiffs suffered and continue to suffer special harm relating to the use and enjoyment of their land and property, and decreased property values—damages of a different kind than those suffered by the public at-large.

89. Plaintiffs did not consent to noxious odors entering upon their property.

11

90. Whatever social utility provided by the Facility is clearly outweighed by the harm suffered by Plaintiffs and the putative class, who have on unusually frequent occasions been deprived of the full use and enjoyment of their properties and have been forced to endure substantial loss in the value of their properties.

91. Defendant's substantial and unreasonable interferences with Plaintiffs' property rights constitute a nuisance for which Defendant is liable to Plaintiffs for all damages arising from such nuisance, including compensatory and injunctive relief.

## II. CAUSE OF ACTION TWO
## NEGLIGENCE

92. Plaintiffs restate the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

93. Defendant owed Plaintiffs, as neighboring residents with residential property rights, a duty of care with regard to its construction, operation, and maintenance of the Facility.

94. A properly constructed, operated, and maintained facility will not emit noxious odors into neighboring residential areas.

95. Defendant is required to control its odorous emissions by, among other things, utilizing adequate odor mitigation and control technologies at the Facility; adequately operating and maintaining its odor mitigation and control technologies to prevent off-site odors; adequately storing and disposing of the organic waste, wastewater, and sludge utilized during and produced through its industrial processes, to prevent off-site odors; and other reasonable odor mitigation, elimination, and control systems available to Defendant.

96. Defendant negligently and improperly constructed, operated, and/or maintained its facility and its operations, causing fugitive emissions to escape into the ambient air and invade Plaintiffs' home, land, and property.

97. Defendant has failed to install, operate, maintain, and/or implement adequate odor mitigation and control strategies, processes, technologies, and/or equipment to control its odorous emissions from the Facility and prevent those odors and emissions from invading the homes and properties of Plaintiffs and the putative Class.

98. As a direct, proximate, and foreseeable result of Defendant's negligence in operating and maintaining the Facility, Plaintiffs' property was physically invaded by noxious odors on occasions too numerous to list individually.

99. As a further direct, proximate, and foreseeable result of the foregoing conduct of Defendant, Plaintiffs suffered damages to their property as alleged herein. Such damages include, but are not limited to, the loss of use and enjoyment of Plaintiffs' property and diminution in the value of Plaintiffs' property.

100. By failing to properly operate and/or maintain its facility, Defendant failed to exercise its duty of ordinary care and diligence so that noxious odors would not invade Plaintiffs' property.

12

101. By failing to maintain and/or operate its facility, Defendant has caused the invasion of Plaintiffs' property by noxious odors.

102. Defendant knowingly breached its duty to exercise ordinary care and diligence when it improperly maintained and/or operated its facility and knew or should have known upon reasonable inspection that such actions would—and did—cause Plaintiffs' property to be invaded by noxious odors.

103. As a direct and proximate result of the failure of Defendant to exercise ordinary care, Plaintiffs' residences have been and continue to be physically invaded by noxious odors.

104. After learning about its noxious emissions, Defendant failed to take reasonably adequate steps to abate the conditions causing damages to Plaintiffs' property thereby causing the damages alleged herein.

105. Plaintiffs are entitled to compensatory and injunctive relief because of Defendant's negligence.

**WHEREFORE**, Plaintiffs requests that this Court enter judgment in favor of Plaintiffs and against Defendant Darling Ingredients Inc. as follows:

A. Certification of the proposed Class pursuant to Col. R. Civ. P. 23;

B. Designation of Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C. Judgment in favor of Plaintiffs and the Class members and against Defendant;

D. An Order holding that the physical entrance of the aforementioned noxious odors upon Plaintiffs' property and the airspace above constituted a nuisance;

E. An award, to Plaintiffs and the Class, of compensatory damages and attorneys' fees and costs, including pre-judgment and post-judgment interest thereupon;

F. An award to Plaintiffs and the Class of injunctive relief not inconsistent with Defendant's state and federal regulatory obligations; and

G. Such further relief both general and specific as the Court deems just and proper.

**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES**

Dated:  February 24, 2020

FUICELLI & LEE P.C.

*A duly signed original is on file at the offices of Fuicelli & Lee P.C.*

s/R. Keith Fuicelli
R. Keith Fuicelli, #32108
FUICELLI & LEE, P.C.
1731 Gilpin Street
Denver, Colorado 80218
 (303) 355-7202
 (303) 355-7208
keith@coloradoinjurylaw.com
*Attorneys for Plaintiffs*

*Steven D. Liddle
*Laura L. Sheets
*Matthew Z. Robb
Liddle & Dubin PC
*Pro Hac Vice Motions to Be Submitted*
975 E. Jefferson Ave
Detroit, MI 48207
(313) 392-0015
sliddle@ldclassaction.com
lsheets@ldclassaction.com
mrobb@ldclassaction.com

Plaintiffs' Address:

Robert and Nicole Diaz
3641 Milwaukee Street,
Denver, Colorado 80205

Albert and Lorraine Maldonado
4132 Clayton St.
Denver, CO 80216

14