IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 20-cv-01259-CMA-SKC

ROBERT DIAZ,
NICOLE DIAZ,
ALBERT MALDONADO, and
LORRAINE MALDONADO,
on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

DARLING INGREDIENTS INC., d/b/a DarPro and Pepco Manufacturing,

      Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

---

This matter is before the Court on Defendant Darling Ingredients Inc.'s Motion to Dismiss Plaintiffs' Class Action Complaint ("Motion"). (Doc. # 11.) The Court has reviewed the Motion and related briefing and concludes that no hearing is necessary. For the following reasons, the Court partially grants and partially denies the Motion.

## I.    BACKGROUND[1]

Plaintiffs bring this class action against Defendant alleging claims of nuisance and negligence arising from the release of noxious odors from Defendant's operation of

---

[1] For the purposes of deciding the instant Motion, the Court accepts the well-pleaded facts in the Complaint as true and views the allegations in the light most favorable to Plaintiffs. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124–25 (10th Cir. 2010).

1

its animal rendering and used grease processing facility in Denver ("Facility"). (Doc. # 3 at ¶ 1.) The Facility is in the Adams County industrial/agricultural sector and is zoned industrial. (Doc. # 11 at 2.) It is surrounded by the Purina plant, the SunCor oil refinery, and a wastewater treatment plant. (*Id.*) Plaintiffs reside within three miles south of the Facility. (Doc. # 3 at ¶¶ 4, 16.) The Facility is surrounded by residential properties, whose residents comprise the putative class. (*Id.* at ¶¶ 15, 42.)

At its Facility, Defendant collects discarded animal byproducts, including fat, bones, feathers, and internal organs and entrails, from a wide range of commercial sources. It uses these and other animal byproducts to produce marketable ingredients for products, including feed and fuel. (*Id.* at ¶¶ 19–29.) For its grease recycling process, Defendant collects used cooking oil from food service establishments. (*Id.* at ¶ 26.) The used cooking oil is heated, settled, and refined. (*Id.* at ¶ 27.) The grease processing produces yellow grease, feed-grade animal fat, and oleochemical feedstocks, which Defendant sells commercially. (*Id.* at ¶ 28.)

Plaintiffs allege Defendant's industrial processes involve substantial pollutants, including highly noxious dead animal and "death" odors. (*Id.* at ¶¶ 29, 47.) They allege these odors are unreasonable and cause substantial discomfort to neighboring residents, and Defendant has failed to take reasonable steps to capture and control the odors. (*Id.* at ¶¶ 36–38, ¶¶ 42–53.) The Motion seeks dismissal of Plaintiffs' nuisance and negligence claims pursuant to Fed. R. Civ. P. 12(b)(6). *See generally* (Doc. # 11).

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of [a] plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is **plausible** on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (citation omitted). If the allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). The standard is a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

### III. DISCUSSION

**A.  NUISANCE CLAIM**

Under Colorado law, a nuisance involves a substantial invasion of another's interest in the use and enjoyment of their property when the invasion is either: (1) intentional and unreasonable; (2) unintentional but actionable under the rules for negligent or reckless conduct; or (3) so abnormal or out of place in its surroundings as

4

to fall within the principle of strict liability. *Public Serv. Co. v. Van Wyk*, 27 P.3d 377, 391 (Colo. 2001). The elements of a nuisance claim include an intentional, negligent, or unreasonably dangerous activity causing unreasonable and substantial interference with another's use and enjoyment of their property. *Lowder v. Tina Marie Homes, Inc.*, 601 P.2d 657, 658 (Colo. App. 1979).

Plaintiffs' Complaint alleges both a public and private nuisance. *See, e.g.*, (Doc. # 3 at ¶ 80 ("The noxious odors . . . obstruct the free use of Plaintiffs' property so as to substantially and unreasonably interfere with the comfortable enjoyment and use of life and property")); (*id.* at ¶ 87 ("Defendant's emissions have substantially interfered with rights common to the general public, including the right to uncontaminated and/or unpolluted air.")). Indeed, a nuisance may be both public and private. *Gaskins v. People*, 272 P. 662, 664 (Colo. 1928). A "[p]rivate nuisance is a tort against land predicated on the right of an individual to use and enjoy his property." *Cook v. Rockwell Int'l Corp.*, 273 F. Supp. 2d 1175, 1201–02 (D. Colo. 2003). A public nuisance is "the doing of or failure to do something that injuriously affects the safety, health or morals of the public, or works some substantial annoyance, inconvenience, or injury to the public." *State, Dep't of Health v. The Mill*, 887 P.2d 993, 1002 (Colo. 1994).

   1.   <u>Private Nuisance</u>

To establish liability for private nuisance under Colorado law, the plaintiff must prove the defendant engaged in "an intentional, negligent, or unreasonably dangerous activity resulting in the unreasonable and substantial interference with [the] plaintiff's use and enjoyment of her property." *Van Wyk*, 27 P.3d at 391. Whether the defendant

has unreasonably and substantially interfered with the plaintiff's use and enjoyment of her property is a question of fact. *Id.* To be substantial and unreasonable, the interference generally "must be significant enough that a normal person in the community would find it offensive, annoying, or inconvenient." *Cook*, 273 F. Supp.2d at 1202 (citing Restatement (Second) of Torts § 821F).

The Complaint fails to specify which of the three types of nuisance (intentional, negligent, or based on dangerous activity) it alleges for its nuisance cause of action, so the Court will analyze all three in turn. Regardless of the type of nuisance alleged in the Complaint, the Court finds the Complaint plausibly alleges interference with Plaintiffs' property that is substantial and unreasonable. *See* (Doc. # 3 at ¶¶ 45–47, 86, 88).

### a. Unreasonably Dangerous Activity

The Complaint fails to plausibly allege a nuisance premised upon an unreasonably dangerous activity. The Complaint neither alleges that the processes conducted at the Facility are unreasonably dangerous, nor that Defendant's operation of the Facility is otherwise reckless. The word "dangerous" or "danger" does not appear in the Complaint at all. The word "recklessly" appears once, and that appearance is conclusory. (*Id.* at ¶ 66(a).) Accordingly, the Motion is granted to the extent it seeks dismissal of Plaintiffs' private nuisance claim to the extent it is premised on a theory of unreasonably dangerous activity.

### b. Intentional Nuisance

The Complaint does, however, plausibly allege an intentional nuisance. Colorado defines an intentional nuisance as "one where the actor acted for the purpose of

causing the invasion interfering with the use and enjoyment of the plaintiff's land, or knew that the invasion interfering with the use and enjoyment of the land is the result of, or is substantially certain to result from, his conduct." *Van Wyk*, 27 P.3d at 394 (citing and adopting the Restatement (Second) of Torts § 825). The "intent to act in such a way that an invasion interfering with the use and enjoyment of the plaintiff's property occurs is not limited to the initial act or motivation behind that act." *Id.* at 395. Rather, "if a defendant, with notice that an invasion interfering with the use and enjoyment of the plaintiff's property has occurred, or is substantially certain to occur, continues his conduct without regard to the invasion interfering with the use and enjoyment of the plaintiff's property, that defendant's conduct will be the proper basis for an intentional nuisance cause of action." *Id.*

Here, the Complaint does not allege Defendant operated its Facility for the purpose of causing the invasion interfering with Plaintiffs' use and enjoyment of their land. So, the Court considers whether the Complaint plausibly alleges Defendant knew there was an invasion interfering with the use and enjoyment of Plaintiffs' property, and yet, it continued its offensive conduct anyway.

On that score, the Complaint alleges Defendant knew its operation of the facility was emitting noxious odors onto neighboring properties. In support of that allegation, Plaintiffs allege the Facility was the "subject of frequent complaints from residents;" numerous media reports documented community concerns regarding the smell; 50 households contacted Plaintiffs' counsel documenting the odors; and one putative class member "complained about the STENCH." (Doc. # 3 at ¶¶ 43–47(a).) These allegations

7

do not allege that any of these complaints were made to Defendant, or that Defendant was aware of the media reports. However, the Complaint goes on to allege that "[n]umerous and repeated resident complaints" were made "to Defendant," that these complaints "document date-specific odor events," and that these complaints were made to various governmental agencies who "have attributed the odors to Defendant's rendering plant." The Court finds these latter allegations, coupled with the previous allegations, are sufficient to nudge the intentional nuisance "claim[ ] across the line from conceivable to plausible." *Robbins*, 519 F.3d at 1249 (internal quotations and citation omitted).

        *c.*  *Negligent Nuisance and the Negligence Claim*

    Concerning negligent nuisance, not only must Plaintiffs plausibly allege Defendant unreasonably and substantially interfered with their use and enjoyment of their property, they must also allege that Defendant breached a legal duty that caused their damages. *Sonrisa Holding, LLC v. Circle K Stores, Inc.*, No. 17-CV-00029-STV, 2019 WL 2471370, at *6 (D. Colo. June 12, 2019) (collecting authorities), *reconsideration denied*, No. 17-CV-00029-STV, 2019 WL 2569587 (D. Colo. June 21, 2019), *and aff'd,* 835 F. App'x 334 (10th Cir. 2020); *see also* Colo. Jury Instr., Civil 9:1 (2020 ed.) (elements of liability for negligence). Thus, a nuisance premised on negligence also requires proof of the elements of a negligence claim. *Id.* "[A] mere allegation of negligence does not turn an intentional tort into negligent conduct." *Benavidez v. United States*, 177 F.3d 927, 931 (10th Cir. 1999).

The Court finds that Plaintiffs have plausibly pleaded negligence and negligent nuisance claims at this stage. As previously described, Plaintiffs have plausibly alleged that Defendant unreasonably and substantially interfered with Plaintiffs' use and enjoyment of their property. Turning to the elements of liability for negligence—i.e., duty, breach of duty, injury, and causation, the Court finds that Plaintiffs have plausibly alleged that Defendant had a legal duty to Plaintiffs, that Defendant breached that duty, and that such breach caused Plaintiffs damages.

With respect to Defendant's duty to Plaintiffs, Plaintiffs have alleged that Defendant stores, handles, and processes substantial quantities of dead animal carcasses and old grease, which are highly noxious and odiferous raw materials that require adequate odor mitigation and control measures to prevent off-site odors. (Doc. # 3 at ¶ 32–33.) Plaintiffs have further alleged that Defendant's industrial process results in the production of substantial quantities of wastewater and organic sludge, which Defendant is responsible for disposing of in a manner that does not emit noxious off-site odors. (*Id.* at ¶ 31.) The Court agrees with Plaintiffs that the Complaint alleges that Defendant has a legal duty to take reasonable measures to keep the odors produced at their Facility from invading neighboring residential properties.

Plaintiffs have also plausibly alleged that Defendant breached its duty by not implementing adequate odor mitigation and control technologies at the Facility; inadequately operating and maintaining such technologies to prevent off-site odors; inadequately storing and disposing of the organic waste, wastewater, and sludge utilized during and produced through its industrial processes to prevent off-site odors;

9

and not using other reasonable odor mitigation, elimination, and control systems available to Defendant. The Complaint alleges that "[n]umerous and repeated resident complaints" were made "to Defendant" and "document date-specific odor events." It further alleges that, in contrast to Defendant's Facility, "a properly operated and maintained animal rendering and grease processing facility will not emit noxious odors into the ambient air as fugitive emissions." (*Id.* at ¶ 39.)

Plaintiffs have also plausibly alleged that Defendant's breach caused them damages. The Complaint alleges that numerous and repeated complaints by residents were made to various governmental agencies who "have attributed the odors to Defendant's rendering plant." Plaintiffs have also alleged that the odor emanating from Defendant's Facility has injured them in that they, collectively, have experienced nausea, have been forced to stay inside their homes, have been unable to use their yards, and must walk their dog two miles from home to escape the odor. *See, e.g.,* (*id.* at ¶¶ 42–51). The Complaint goes on to include allegations of harm caused by Defendant from putative class members, including a report by one putative class member that the "Death Smell" means he "can't sit in backyard most days. Can't open windows at night – smell gets so bad it wakes [him] up. Hold breath while walking to car/bus." (*Id.* at ¶ 47(f).)

Therefore, the Court concludes that Plaintiffs' factual allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The level of specificity Defendant urges the Court to require in this case is greater than the *Twombly-Iqbal* pleading standard requires. *See* (Doc. # 11 at 15) (moving the Court to dismiss Plaintiffs'

Complaint for failure to allege, *inter alia*, the specific odor mitigation and control technologies that Defendant allegedly had a duty to use and why the odor mitigation and control technologies Defendant used were insufficient to satisfy any alleged duty).

Defendant argues that Plaintiffs' private nuisance claim fails because its private nuisance and negligence claims rely on the same facts—i.e., that Defendant allegedly operated the Facility negligently, leading to the emission of noxious odors. (Doc. # 11 at 13.) In support of that argument, Defendant cites to a motion for summary judgment that was summarily denied by the presiding state court. *Compare* (Doc. # 11 at 13) (citing *Munoz v. Public Serv. Co.*, No. 2018-CV-30954, 2019 Colo. Dist. LEXIS 1626, at *15 (Colo. Dist. June 21, 2019) (motion for summary judgment)) *with Munoz*, 2019 Colo. Dist. LEXIS 1626, at *1 (summarily denying motion for summary judgment). Defendant states in a footnote that "Colorado law dismissing private nuisance claims as duplicative of negligence claims is consistent with case law nationwide," but Defendant has merely cited an unsuccessful motion for summary judgment and, therefore, has not cited to any "Colorado law dismissing private nuisance claims as duplicative of negligence claims." Defendant's argument that Plaintiffs' private nuisance claim fails because it relies on the same facts as Plaintiffs' negligence claim is legally unsupported and, therefore, rejected by this Court.

The Court notes that some Colorado case law indicates that negligent and intentional torts based on the same conduct are mutually exclusive. *See Coffman v. Godsoe*, 351 P.2d 808, 816 (Colo. 1960) (affirming the trial court's decision not to submit a wantonness/recklessness instruction to the jury where the defendant's conduct

was "clearly and indisputably negligent" and "f[ell] short of wantonness"). However, the briefing before the Court is inadequate to determine whether Plaintiffs may simultaneously bring claims for intentional nuisance and negligent nuisance/negligence. It is sufficient, at this stage, for the Court to conclude that Plaintiffs have plausibly stated all three claims. Moreover, the Court's decision herein to allow Plaintiffs' claims to proceed to discovery is consistent with *Coffman*, 351 P.2d at 816, which considered **after trial** whether the jury should have received instructions on both negligence and wantonness based on the individual facts of that case. The parties may brief at summary judgment, following further factual development, whether Plaintiffs may maintain both intentional and negligent tort claims in this case.

        d.    *Whether a Private Nuisance May Be Maintained by Adjoining Landowners Only*

Defendant also argues that a private nuisance may be maintained by adjoining landowners only. The Court does not find this argument persuasive.

In support of its argument, Defendant again cites to the summarily denied motion for summary judgment in *Munoz*, 2019 Colo. Dist. LEXIS 1626, at *16. *See id.* at *1 (denying the motion). In actuality, a private nuisance claim does not require ownership or possession of land to state a valid claim. *See Cook*, 778 F. Supp. at 516 (citing Restatement (Second) of Torts § 821E(c) (1979)). Liability for private nuisance exists "for the protection of persons having 'property rights and privileges,' that is, legally protected interests, in respect to the particular use or enjoyment that has been affected. . . . One having 'property rights and privileges' in land can maintain an action under the rule here stated only if the conduct of the actor interferes with the exercise of the

12

particular rights and privileges that he owns." Restatement (Second) of Torts §821E, cmt. a. It follows, therefore, that a claim for private nuisance is not limited solely to adjoining landowners. *See Cook*, 778 F. Supp. at 516 ("[A]s long as the plaintiff has a sufficient interest in the land, it may bring an action for [private] nuisance even if it is not the owner or possessor of the land.").

The Court finds the Third Circuit's decision in *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214 (3d Cir. 2020), persuasive. In *Baptiste*, property owners sued a landfill operator on behalf of themselves and a putative class of residential property owners and renters asserting claims for public nuisance, private nuisance, and negligence. They argued the landfill released pollutants, air contaminants, and noxious odors, causing material injury to plaintiffs' property. The district court granted defendant's motion to dismiss. The Third Circuit reversed and remanded.[2]

The Third Circuit found "two missteps" in the district court's analysis of the plaintiffs' public nuisance claims. First, regarding special injury, the district court "incorrectly conflated the putative class with the general public" by comparing the injuries suffered by plaintiffs with the same injuries suffered by similarly situated class members, as Defendant asks this Court to do. *Id.* at 222. The Third Circuit held the appropriate comparison, rather, was of "the injuries suffered by putative class members as homeowners-occupants and renters with the harm shared by all community members including nonresidents such as visitors and commuters." *Id.* That proper

---

[2] Defendant relies on the reversed district court decision in *Baptiste* in its Motion. In fairness to Defendant, the Third Circuit's reversal issued after full briefing on the Motion.

comparison revealed plaintiffs' special injury resulting from the nuisance. *Id.* at 222–23. Second, the district court improperly concluded an injury is not special if many plaintiffs suffer the same injury, which Defendant also asks this Court to conclude. *Id.* at 222. The Third Circuit rejected this conclusion in part because no Pennsylvania court had held the same, and Pennsylvania law controlled. Similarly, Defendant cites no Colorado authority with this holding, and this Court has found none.

Regarding plaintiffs' private nuisance claim, the Third Circuit found the district court erred by: (1) dismissing the private nuisance claim on the basis that the nuisance affected the whole community rather than only a particular person; and (2) dismissing the claim on the ground that plaintiffs' property was too far (1.6 miles) from the source of the nuisance. *Id.* at 222–23. Instead, the Third Circuit held "because the Baptistes have alleged that their private property rights are being significantly and unreasonably infringed by the presence of noxious odors and air contaminants released by the Bethlehem landfill, they have stated both a private claim for public nuisance and a private nuisance claim." *Id.* at 223.

Defendant raises identical, or nearly identical, arguments to those rejected by the Third Circuit in *Baptiste*, *supra*. The Court finds the *Baptiste* Court's analysis persuasive and rejects Defendant's arguments in the instant case pursuant to *Baptiste*'s reasoning.

**B.    PUBLIC NUISANCE**

"A public nuisance is the doing or failure to do something that injuriously affects the safety, health, or morals of the public or works some substantial annoyance, inconvenience, or injury to the public." *State, Dep't of Health v. The Mill*, 887 P.2d 993,

1002 (Colo. 1994). The injury must be common to the public such that it interferes with a public right. *See id.*; *see also* Restatement (Second) of Torts § 821B (1979) ("Conduct does not become a public nuisance merely because it interferes with the use and enjoyment of land by a large number of persons. There must be some interference with a public right.") "A public right is one common to all members of the general public. It is collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured." *Id.* ("Thus the pollution of a stream that merely deprives fifty or a hundred lower riparian owners of the use of the water for purposes connected with their land does not for that reason alone become a public nuisance. If, however, the pollution prevents the use of a public bathing beach or kills the fish in a navigable stream and so deprives all members of the community of the right to fish, it becomes a public nuisance.").

To bring a private claim for public nuisance, in addition to the elements of nuisance (stated above), a plaintiff must establish special injury. *Ward v. Colorado E. R. Co.*, 125 P. 567, 572 (Colo. App. 1912) ("[T]he construction and maintenance of a railway over the streets of a city (especially a steam road) without authority constitutes a public nuisance, and may be enjoined at the suit of any individual who suffers a special injury as a result thereof."). "A special injury is one that is different in kind, not simply degree, from that suffered by members of the public generally." *Ponca Tribe of Indians of Oklahoma v. Cont'l Carbon Co.*, No. CIV-05-445-C, 2008 WL 11338389, at *3 (W.D. Okla. July 1, 2008). For example, "[p]roperty damage or loss of value caused by pollution might be such a special injury." *Id.*

15

Here, the Complaint plausibly alleges the elements of a private claim for public nuisance. As mentioned above, the elements of an intentional and negligent nuisance are sufficiently pleaded in the Complaint. Plaintiffs have alleged that the noxious odors have reduced Plaintiffs' property values, required them to stay locked-up in their homes, rendered them unable to enjoy their yards, and affected their ability to hold gatherings at their homes. Therefore, the Complaint plausibly alleges special injury because these harms are different in kind from those experienced by the public at large. *See, e.g.*, (Doc. # 3 at ¶¶ 45–47).

Defendant argues that Plaintiffs' public nuisance claim fails because Plaintiffs' alleged damages did not occur while exercising a public right. However, it cites no Colorado case law in support of that argument, and the Court has found none. Instead, as noted above, Colorado law allows a private claim for public nuisance where a special injury exists. Defendant's argument appears to contradict the requirement of a special injury; if a plaintiff's injury must occur while exercising a right available only to the public (as Defendant contends), it would seem nearly impossible for a plaintiff to establish a special injury since a special injury must be different in kind from that experienced by the public. Defendant's argument is rejected.

Defendant also argues that permitted operations cannot constitute a public nuisance, and that its Facility operates in accordance with its zoning classification and permit requirements. However, it provides no evidence from which this Court may take judicial notice of the purported fact that Defendant's operation is regulated by permit or that Defendant's operations are or were in compliance with any regulatory requirements

16

during the time Plaintiffs suffered the noxious odors. At this stage, the Court is limited to analyzing the allegations contained in the Complaint. Therefore, this issue seems more suitable for summary judgment.

## IV.     CONCLUSION

For the foregoing reasons, Defendant Darling Ingredients Inc.'s Motion to Dismiss Plaintiffs' Class Action Complaint (Doc. # 11) is GRANTED IN PART AND DENIED IN PART as follows:

- the Motion is DENIED with respect to the following claims: private nuisance, to the extent such claim is premised on theories of intentional nuisance and negligent nuisance; public nuisance; and negligence;
- the Motion is GRANTED as to any nuisance claim premised on a theory of unreasonably dangerous activity. To the extent Plaintiffs' nuisance claim is premised on a theory unreasonably dangerous activity, such claim is DISMISSED WITHOUT PREJUDICE.

DATED:  March 29, 2021

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge